UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bancorp Equipment Finance, Inc.,

      Plaintiff,

  v.

Ameriquest Holdings LLC; Ananya
Aviation LLC; and Brad Gupta,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Case No. 03-5447 ADM/AJB

_____

Charles F. Webber, Esq., Faegre & Benson LLP, Minneapolis, MN, appeared for and on behalf of Plaintiff.

Ronald T. Bevans, Jr., Esq., Law Offices of Ronald T. Bevans, Jr., P.A., Miami, FL, appeared for and on behalf of Defendants.

_____

## I. INTRODUCTION

On November 1, 2004, oral argument before the undersigned United States District Judge was heard on Plaintiff U.S. Bancorp Equipment Finance, Inc.'s ("USBEF") Motion for Summary Judgment [Docket No. 21]. In its Complaint [Docket No. 1], USBEF seeks enforcement of loan agreements after alleged defaults by Defendants Ameriquest Holdings LLC ("Ameriquest"), Ananya Aviation LLC ("Ananya"), and Brad Gupta ("Gupta") (collectively, "Defendants"). For the reasons set forth below, Plaintiff's Motion is granted.

## II.  BACKGROUND[1]

In 1999, Brad Gupta formed Ameriquest Holdings LLC.  Exhibit Index ("Index") [Docket No. 25] at 9-10.  Gupta and his brother-in-law are the sole shareholders of Ameriquest. Id.  In July 2000, Ameriquest purchased a Boeing 737 ("Ameriquest Airplane") from Bank of America Leasing and Capital.  Id.  At the time of purchase, the plane was leased to U.S. Airways under a lease scheduled to expire in April 2003.  Id. at 10, 13.  In order to finance the plane, Ameriquest borrowed $3,858,000 from Firstar Equipment Finance ("Firstar").  Id. at 12-13.  The loan terms included quarterly payments during the life of the U.S. Airways lease, followed by a lump-sum "balloon" payment equal to the outstanding balance when the lease expired in April 2003.  Id.  Ameriquest and Firstar entered into a Secured Loan Agreement which gave Firstar a security interest in the Ameriquest Airplane.  Id. at 68-117.  The Secured Loan Agreement gave Firstar the right to repossess and sell the airplane in the event of default by Ameriquest.  Id.  Moreover, the Secured Loan Agreement required Ameriquest to obtain written consent from Firstar before re-leasing the Ameriquest Airplane.  Id. at 74, 97.

Gupta acknowledged that during negotiations for the Ameriquest Airplane loan, he and Firstar had conversations regarding how Ameriquest would remarket the plane following the expiration of the U.S. Airways lease.  Id. at 18-19.  However, there was no explicit agreement that Firstar would allow Ameriquest to re-lease the airplane to a foreign operator.  Id. at 20.

Also in 2000, Gupta formed Ananya Aviation LLC, of which he is the sole owner,  in order to buy two MD-82 aircraft (the "Ananya Airplanes") from GATX Capital Corporation ("GATX").  Id. at 14.  At the time they were purchased, the Ananya Airplanes were leased to

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to Defendants.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Continental Airlines.  Id. at 14-15.  The leases were set to expire in September 2002.  Again, Firstar provided financing for the Ananya Airplanes.  Before the completion of the Ananya Airplanes loan, Gupta exchanged e-mails with Scott McCann, a Firstar loan officer, regarding the prospects for re-leasing the Ananya Airplanes following the expiration of the Continental Airlines lease.  Id. at 23, 258.  In an e-mail to McCann dated November 2, 2000, Gupta indicated that he would attempt to market the Ananya Airplanes to operators around the world.  Id. at 258-59.  In response, McCann informed Gupta that Firstar only financed equipment used domestically.  Id.  He did indicate a possibility that Firstar might change its policy by the time the Continental Airlines leases expired.  Id.  However, Gupta testified he understood at the time the loan closed Firstar's policy was to finance airplanes used domestically.  Id. at 23-24.

      Four months following the e-mail exchange, Firstar made two loans to Ananya, one for each of the Ananya Airplanes.  On March 22, 2001, the loans closed in the amounts of $5,610,380.59 and $5,004,047.26.  Id. at 118, 175.  Similar to the Ameriquest Airplane lease, these loans required quarterly payments and a lump-sum balloon payment following the expiration of the Continental Airlines leases in September 2002.  Id. at 16-17.  Firstar's prior approval before a new lease was entered was required by the Secured Loan Agreements entered into for the Ananya Airplanes just as it had been under the Secured Loan Agreement entered into with regard to the Ameriquest Airplane.  Id. at 125-183, 184-235.

      Firstar also acquired additional security with respect to the Ananya Airplanes in the form of guaranties from GATX and Gupta.  GATX guaranteed that if Firstar were forced to repossess and sell the Ananya Airplanes, Firstar would recover $1,000,000 per airplane.  Id. at 236-57.  Additionally, Gupta promised to pay up to $1,000,000 per airplane to Firstar in the event of default by Ananya, after Firstar collected on the GATX guaranties.  Id.

Following the closing of the above-described loans, USBEF acquired Firstar's rights under the relevant loan documents. Phillipi Decl. [Docket No. 24] ¶ 2.

After the tragic events of September 11, 2001, all parties agree that the airline and airplane market was devastated. In August and September of 2002, Continental Airlines decided not to renew the leases on the Ananya Airplanes, and returned the aircraft to Ananya. Both planes were returned to Ananya in a damaged condition. Damages included an unserviceable engine and an inferior auxiliary power unit installed by Continental. Id. at 57. Additionally, both airplanes required expensive inspections. Id. Following the failure of Continental to renew the leases, Ananya did not make the balloon payment that came due in September 2002. Id. at 37.

Meanwhile, U.S. Airways filed for bankruptcy following 9/11. As part of the bankruptcy proceedings, U.S. Airways terminated the lease and returned the Ameriquest Airplane to Ameriquest. U.S. Airways made its last lease payment in June 2002. Following the termination of the lease, Ameriquest failed to make its quarterly payments to USBEF, and also failed to make the balloon payment that came due in April 2003. Id.

Following the defaults by Ananya and Ameriquest, USBEF had the option to repossess the Ameriquest and Ananya Airplanes. Id. at 39. However, USBEF gave Ameriquest and Ananya time to sell or refinance the airplanes. Id. Gupta suggested to USBEF that he re-lease the planes to overseas operators in countries including Pakistan, Nigeria, and Indonesia. Id. at 28, 34. The loan agreements required USBEF's consent before Ananya or Ameriquest could re-lease the planes. In addition to obtaining USBEF's consent to re-lease the planes, Defendants were required to refinance the loans or convince USBEF to extend the maturity dates of the loans, as the balloon payments on all the loans were due and owing by April 2003. Id. at 47.

4

Gupta and USBEF also looked into the possibility of an outright sale of the airplanes. USBEF received an offer for the Ameriquest Airplane, but Gupta did not consent to the sale. Id. at 46. Instead, Gupta put together an investment group in an attempt to purchase the Ameriquest Airplane. Id. at 33. On January 16, 2003, Gupta's group made an offer of $540,000 for the airplane. Id. at 49. On February 6, the group lowered its offer to $525,000. Id. at 49-50. On March 25, the group submitted a third offer in the amount of $300,000. Id. at 52. Shortly after this offer from Gupta, USBEF decided to foreclose on the Ameriquest Airplane and sell it through a private sale. Id. at 54. Although USBEF communicated this information to Gupta, his group continued to make offers on the Ameriquest Airplane. Id. at 53.

Ultimately, USBEF foreclosed on and sold the Ameriquest and Ananya Airplanes. The Ameriquest Airplane was sold for $450,000. Phillipi Decl. ¶ 6. At the public auction for the Ananya Airplanes, USBEF bid a total of $2,900,000 for the two aircraft. Id. ¶ 8. Following the sale of the aircraft, USBEF applied the $450,000 from the Ameriquest Airplane sale to Ameriquest debt. Id. ¶ 6. Additionally, USBEF applied the proceeds from the $2,900,000 it bid on the Ananya aircraft to Ananya's debt. Id. ¶ 9. Moreover, USBEF deducted the $1,000,000 it received for each of the Ananya aircraft from the GATX guaranties from the Ananya debt. Id. ¶ 10.

After applying these payments, the principal balance on the Ameriquest note as of August 27, 2004 was $2,986,960.45, with $315,586.36 owed in interest. Id. ¶ 12. The interest on the Ameriquest note is accruing at the rate of $871.03 per day. Id. The balance on the Ananya notes as of August 27, 2004 was $6,736,443.08, with total unpaid interest equal to $684,008.04. Id. ¶ 13. Interest is accruing at the rate of $1,915.99 per day on the Ananya notes. Id.

## III.  DISCUSSION

A.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

B.  **Defendants' Default**

It is undisputed that Defendants have defaulted on the loans at issue.  Gupta conceded at his deposition that Ameriquest failed to make its required quarterly payments, as well as the balloon payment due in April 2003.  Index at 37.  Similarly, as admitted by Gupta, Ananya failed to make the balloon payment due in September 2002.  Id. at 37.  Moreover, it is undisputed that Gupta has never paid either of the $1,000,000 guaranties he signed with respect to the Ananya Airplanes.

C.  **Defendants' Defenses**

Defendants have offered a number of defenses to their default of the relevant loans.

Plaintiff argues that each of these defenses are deficient, and, as a result, Plaintiff is entitled to judgment on its claims. Many of Defendants' defenses are premised upon Plaintiff's refusal to consent to re-lease the Ameriquest and Ananya Airplanes to foreign operators.

### 1. Breach of Good Faith and Fair Dealing

Defendants claim USBEF breached the duty of good faith and fair dealing implied in all contracts under New York law.[2] Krike La Shelle Co. v. Paul Armstrong Co., 188 N.E. 163, 167 (N.Y. 1933). This duty requires parties to avoid acting in a manner which would destroy the benefits of the agreement. Id. The parties' intent and expectations at the time of execution assist in defining good faith. Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir. 1989). Here, Defendants argue that the loan agreements at issue expressly allowed for the re-leasing of the Ameriquest and Ananya Airplanes to foreign operators. Because USBEF refused to approve any of the leases involving foreign operators suggested by Ameriquest and Ananya, Defendants argue they were forced to default on their loans. Defendants cite various portions of the loan agreements that reference the possibility that an "Aviation Authority" other than the Federal Aviation Administration may have jurisdiction over the airplanes at some point during the life of the loans. Defendants also note that the "Remarketing Period" contemplated by the loan agreements contains no geographical constraints. Finally, Defendants claim that Gupta expected that he would be allowed to re-lease the planes internationally.

USBEF counters by arguing that it had an absolute right to refuse its consent for the foreign leases proposed by Defendants. USBEF notes that New York law puts it under no obligation to give its consent to Defendants. "[I]n the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent for

---

[2] The loan agreements all contain New York choice of law provisions. Index at 108,164-65, 225.

any reason or no reason, and that no implied obligation to act in good faith exists to limit that choice." Teachers Ins. & Annuity Ass'n of America v. Wometco Enterprises, Inc., 833 F.Supp. 344, 349 (S.D.N.Y. 1993). Here, despite Defendants' insistence that the language of the loan agreements contemplated foreign leases, no language provides USBEF's decision whether to consent must be reasonably exercised. The portions of the agreements upon which Defendants rely do indicate that a foreign lease was a possibility. However, even assuming, *arguendo*, that USBEF's refusal to consent to foreign leases was without a reasonable basis, no section of the agreements require USBEF to be reasonable in granting its consent. Rather, the relevant language states merely that USBEF's "prior written consent" is required before Defendants could enter into other leases. Index at 74, 97. Consequently, Defendants have failed to create a genuine issue of material fact that Plaintiff breached its duty of good faith and fair dealing in not consenting to a lease to a foreign operator.

In any event, to accomplish the re-leasing of the airplanes, Defendants were also required to either secure refinancing of the loans, or convince USBEF to extend the maturity date of the loans. There is no evidence to suggest that either of these events took place.

### 2. Commercially Reasonable Sale of Collateral

Defendants argue that USBEF's sale of the Ameriquest and Ananya Airplanes did not meet commercially reasonable methods as set forth in Section 9-610(b) of the Uniform Commercial Code ("UCC"). USBEF argues it gave the requisite notice for the private sale of the Ameriquest Airplane and the public sale of the Ananya Airplanes as required by the UCC. Phillipi Decl. ¶¶ 6-7; Index 297-300. Moreover, USBEF avers the sale of the Ameriquest and Ananya Airplanes yielded reasonable prices, as Gupta's deposition testimony suggests. Index 52, 56-57, 59.

In its responsive brief, Defendants do not dispute the manner in which USBEF sold the Ameriquest and Ananya Airplanes. Rather, Defendants complain that USBEF refused to consider options other than the outright sale of the aircraft, such as leasing the planes to foreign operators. Defendants contend such leases would have increased the value of the aircraft. Given the foreign leasing opportunities for the aircraft, Defendants argue the sale of the aircraft was commercially unreasonable.

Defendants, however, cite no authority for the proposition that the UCC somehow requires a seller to allow the re-lease of collateral in an attempt to increase its value prior to its sale. The UCC establishes the commercially reasonable procedure through which collateral may be sold. See, e.g., UCC §§ 9-611, 9-612, 9-613. No reasonable reading of the relevant UCC sections suggests that USBEF was under an obligation to consent to the re-lease of the airplanes before commencing sale of the airplanes. As Defendants have proffered no evidence to suggest that the sales of the Ameriquest and Ananya Airplanes were conducted in an unreasonable manner, judgment will be granted to USBEF.

### 3. Impossibility of Performance and *Force Majeure*

Defendants have also raised the defense of impossibility and *force majeure*. Under New York law, impossibility may be raised if one of two conditions is met: (1) the subject matter of the contract is destroyed; or (2) the means of performance is destroyed so as to make performance objectively impossible. Kel Kim Corp. v. Central Markets, Inc., 519 N.E.2d 295, 296 (N.Y. 1987). However, "that performance should be excused only in extreme circumstances." Id. Moreover, "financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy," are not sufficient circumstances for a finding of impossibility. 407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp., 244 N.E.2d 37, 41 (N.Y. 1968).

Here, Defendants do not argue that the subject matter of the contract – the airplanes – was destroyed.  Rather, Defendants contend performance was rendered impossible by the events of 9/11.  Following 9/11, the airplane and airline market around the world suffered immense losses.  Numerous airlines went bankrupt (including U.S. Airways), while other airlines simply ceased operations.  While the Court is sympathetic to Defendants' plight, the crash of the airline and airplane industry does not rise to the level of impossibility demanded by New York law.  Certainly, 9/11 radically depressed the market for airplanes.  However, decreased value of collateral is not contemplated by New York law as an excuse for lack of performance based on impossibility.  As New York courts have made plain, the fact that a contract proves to be unprofitable or onerous for one party does not excuse performance.  <u>407 East 61st Garage</u>, 244 N.E.2d at 41; <u>Lowe v. Feldman</u>, 168 N.Y.S.2d 674, 685 (N.Y. Sup. 1957).  Investments gone bad due to unforeseen market forces undoubtedly are also captured in this rubric.

Additionally, Defendants claim that USBEF made performance impossible by failing to approve leases of the aircraft to foreign operators.  Defendants do not cite any provision of the loan agreements, however, that affirmatively requires USBEF to approve leases.  Nor do Defendants cite any case law suggesting that a failure to approve a lease constitutes impossibility of performance.

Defendants also raise the defense of *force majeure*.  However, for *force majeure* to apply under New York law, such a clause must be present in the contract which specifically covers the event in question.  <u>Kel Kim</u>, 519 N.E.2d at 296-97.  Here, the relevant loan agreements contain *force majeure* clauses, but only to protect USBEF from liability  – not to protect Defendants.  Index at 103-04, 160, 220.  As a result, this defense cannot be employed by Defendants.

10

### 4. Fraud in the Inducement

Defendants also assert they were fraudulently induced into signing the loan agreements. Gupta argues that USBEF led him to believe that USBEF would be willing to consent to leasing the Ameriquest and Ananya Airplanes to foreign operators after the expiration of the current leases. This argument fails for two reasons.

First, the loan agreements at issue all contain integration clauses, stating in part: "none of the parties hereto or thereof shall be bound by or charged with any oral or written agreements, representations, warranties, statements, promises or understandings not specifically set forth herein or therein." Index at 107-08, 164, 225. The loan agreements unambiguously require USBEF's consent before Defendants could re-lease the aircraft. Moreover, as discussed above, there is no express allowance for foreign leases within the agreements. As a result, the integration clause forbids consideration of any oral understandings that were reached during the negotiation of the loan agreements.

Second, even if this Court could consider such side arrangements, Gupta's own deposition testimony flatly contradicts his allegations. In his deposition testimony, Gupta admitted USBEF never stated it would give unconditional approval to foreign re-leases. In fact, USBEF warned Gupta it might refuse its consent in such an instance. Id. at 258-59. As a result, Defendants' claim of fraud in the inducement is untenable.

### 5. Additional Defenses

USBEF also moves for summary judgment on a number of defenses to which Defendants offer no response in their brief. First, Defendants argue that USBEF failed to attach all of the relevant loan documents to its Complaint. Federal Rules of Civil Procedure 8(a) states complaints are to be a "short and plain statement" of the case. There is no argument proffered

that significant loan documentation is absent from the record.

Second, Defendants argue they are entitled to offset any recovery USBEF receives in its suit against Continental Airlines. Continental allegedly returned the Ananya Airplanes in poor condition; as a result, USBEF, following its purchase of the Ananya Airplanes, filed suit against Continental. Defendants claim they are entitled to offset any recovery made by USBEF. This argument, however, fails to recognize that USBEF purchased all of Ananya's rights to the airplanes when it bought the Ananya Airplanes. USBEF has, per Section 9-615(a) of the UCC, credited Defendants with the proceeds from its bid of $2,900,000 on the aircraft at the public auction. Phillipi Decl. ¶ 9. Defendants have no right to offset any recovery USBEF may receive from Continental.

Third, Defendants contend USBEF unilaterally and materially altered the terms of the loan agreements. As Defendants have not responded to Plaintiff's motion to dismiss this defense, there is no indication Defendants have any evidence to support this contention.

**D.     Defendants' Counterclaims**

USBEF also moves for summary judgment on Defendants' two counterclaims. For reasons previously analyzed, both of these counterclaims are rejected. Defendants allege USBEF violated its duty of good faith and fair dealing and claim USBEF fraudulently induced Defendants into signing the relevant loan agreements. As discussed previously, Defendants have failed to proffer any evidence showing USBEF breached its duty of good faith. Nor have Defendants proffered evidence related to its fraudulent inducement claim; in fact, Defendants have not even responded to USBEF's motion to dismiss this claim. Because no evidence exists to support either of these counterclaims, they are dismissed.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 21] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　　s/Ann D. Montgomery　　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 7, 2004.